(No. 6491. November 15, 1938.)

FLORENCE McHAN, Respondent, v. VANCE McHAN, Appellant.

[84 Pac. (2d) 984.]

M. F. Ryan and James R. Bothwell, for Appellant.

A. F. James, for Respondent.

BUDGE, J.—This is an appeal from an order denying appellant's motion to modify a divorce decree and ordering appellant to pay $100 attorney's fees, such order having been heretofore referred to in *McHan v. McHan,* 59 Ida. 41, 80

Pac. (2d) 29, wherein the facts are in part recited. Substantially the record discloses the following: Marital differences having arisen between appellant and respondent, on November 12, 1932, they entered into an agreement providing in part as follows:

"WHEREAS, the parties hereto are husband and wife, disagreements have arisen between them, they have separated, and the party of the second part is about to institute a suit for divorce against the party of the first part, and said parties are desirous of making a full and complete settlement of all their property interests and to divide up their property:

"NOW, THEREFORE, it is hereby mutually agreed between the parties hereto as follows: .

"The party of the second part is to receive and hold as her sole and separate property the home in Fairfield . . . . also certain lots, . . . . also three certain lots . . . . also all household goods, and furniture belonging to the parties . . . . also all personal property . . . . and also one 1930 Model A. Ford Automobile. . . . .

"All other property owned by the parties hereto shall pass to and be the sole and separate property of the party of the first part. . . . .

"In addition to the foregoing, the party of the first part agrees to pay within one year from date hereof all mortgage indebtedness and all delinquent taxes upon the home in Fairfield Townsite, including the 1932 taxes thereon. . . . . *In addition to the foregoing, the party of the first part is to pay the party of the second part for her support a monthly sum of $35.00 per month and any decree of divorce hereafter granted shall contain a provision for the same.* . . . . It is further agreed that in the event that the party of the first part shall die before the expiration of ten (10) years from date hereof, and the party of the second part be then alive, then and in that event, the party of the second part shall be entitled to file and have allowed a claim against the estate of the party of the first part in the sum of $3000.00. . . . .

"It is further understood and agreed that this agreement shall be submitted to the court for its approval and that said

property may be divided and decreed by the court in accordance with the terms of this agreement and that the court may incorporate this agreement as a part of its decree.''

Respondent filed an action for divorce the same day, November 12, 1932, the complaint alleging and praying with reference to the foregoing agreement as follows:

''That prior to the institution of this suit, plaintiff and defendant entered into a written contract for the division of said property *and for the payment by the defendant of a certain sum of money per month to the plaintiff for her support,* . . . .

''WHEREFORE, plaintiff prays judgment, . . . . that the property of the plaintiff and defendant be divided and apportioned in the manner set out in said contract *and that a decree be granted awarding her alimony in the sum of $35.00 per month and the other rights and benefits given her by the terms of said contract.*'' (Emphasis inserted.)

Appellant, regularly served with process, failed to appear, default was entered against him and judgment of divorce was entered providing as follows with reference to the property agreement:

''NOW THEREFORE, it is hereby ordered, adjudged, and decreed, . . . . That the above mentioned contract between the plaintiff and defendant settling their property interests and dividing the same be and the same is hereby approved and confirmed by the court, and that *by virtue of the same,* the property of plaintiff is hereby divided as follows, to-wit: . . . .

''The defendant is further ordered and directed to pay to the plaintiff *during her lifetime* for her support a monthly sum of $35.00 per month . . . . provided, however, that in the event that the defendant die before the expiration of ten years from date hereof, and the plaintiff be then alive, the plaintiff shall be entitled to file and have allowed a claim against the estate of the defendant in the sum of $3,000.00.'' (Emphasis inserted.)

The record discloses that all terms of the decree of divorce with reference to the division of the property were fulfilled. It also appears that the payments of $35 monthly were made

for some years, but that upon appellant's hearing of respondent's remarriage to one Christopherson such payments were discontinued. Respondent married Christopherson June 1, 1935, and the payments were continued for eight months thereafter. After the institution of contempt proceedings by respondent, appellant on December 16, 1936, moved to modify, vacate and set aside the judgment or decree entered "in so far as the same required this defendant to pay alimony to the plaintiff during her lifetime"; and to strike from said judgment the words "during her lifetime," and further:

"to relieve this defendant from any and all obligation to pay any future alimony or support money to the plaintiff and to relieve him from the payment of all alimony or support money accruing since the date of the plaintiff's remarriage and for an order cancelling all payments of alimony or support money accruing after such remarriage."

Respondent then asked an order requiring appellant to pay $100 as attorney fees incurred in resisting appellant's motion.

The primary question appears to be whether or not the provision contained in the decree, providing for the payment of $35 per month, was in settlement of property rights, or, was an allowance to the wife for her support, as contemplated by section 31-706, I. C. A., which section provides:

"When a divorce is granted for an offense of the husband the court may compel him to make such suitable allowance to the wife for her support as the court may deem just, and the court may, from time to time, modify its orders in these respects."

If the decree provided for an allowance as contemplated by the foregoing statute, the statute appears to permit of no other construction than that it is subject to modification thereafter. (*Humbird v. Humbird*, 42 Ida. 29, 243 Pac. 827; *Soule v. Soule*, 4 Cal. App. 97, 87 Pac. 205.) It further appears that if the decree provided for a payment of an allowance as contemplated by section 31-706, *supra*, that portion of the decree reciting "during her lifetime" was in violation of the statute, void, and should have been stricken by the trial court upon its being brought to its attention.

(*Gile v. Wood,* 32 Ida. 752, 188 Pac. 36; *Angel v. Mellen,* 48 Ida. 750, 285 Pac. 461.)

In addition to the situation as disclosed by the agreement, the decree, and the complaint, certain other evidence appears in the record which indicated very clearly the understanding of the parties of what was meant by the agreement and the decree. In the affidavit in contempt proceedings, made, subscribed and sworn to by respondent, the following appears:

"That there is now unpaid and delinquent from the said Vance McHan to this plaintiff, Florence McHan *for and on account of the monthly alimony payments required by said judgment the total sum of $280* . . . . that this plaintiff has repeatedly requested and required the said Vance McHan to pay the above mentioned . . . . delinquent *alimony payments.* . . . . (Emphasis inserted.)

It further appears that when said agreement was entered into, appellant, while owning considerable property, was indebted to the extent of some $53,000 and at that time could not have liquidated his business affairs. All his property was incumbered and appellant and respondent as a marital community were insolvent, with but a hope of future solvency. A considerable amount of community property was cleared of all incumbrances, including taxes, etc., and given to the wife by the terms of the agreement and the divorce decree, and in so far as appears respondent received at least her share of the net worth, if any there actually was, of the community.

It is urged that the recital contained in the agreement and the decree that:

"in the event that the defendant die before the expiration of ten years from date hereof, and the plaintiff be then alive, the plaintiff shall be entitled to file and have allowed a claim against the estate of the defendant in the sum of $3,000."

alone indicated that the required payment of $35 a month was intended to represent "more than alimony *in its strictest legal interpretation* and that the monthly payments were intended to be partially in lieu of respondent's rights in the community property." It is not necessary to and I specifically do not determine herein whether this provision is an

integral part of the provision contained in the decree for the payment of $35 per month, or whether it is a contract entirely separate and apart therefrom. If it be an integral part of the provision for the payment of $35 per month it appears more logical that such provision was inserted for the purpose of securing to respondent (sec. 31–707, I. C. A.), while she was entitled thereto, the payment of $35 per month for her support, should appellant die within ten years and while respondent was still entitled to receive an allowance for her support, and there is evidence that such was appellant's understanding:

"MR. JAMES: This division of the property and claim against the estate in case you died, for three thousand dollars; weren't all of these your suggestions.

"A. No, sir, you said: 'Your wife should have a little protection supposing you die in a year or two or three; she ought to have something out of the estate.' "

In *Gloth v. Gloth,* 154 Va. 511, 153 S. E. 879, 71 A. L. R. 700, a similar situation is presented and the court, speaking of a contract similar to that involved herein, states:

"Said contract is clearly a divisible contract. One part thereof deals with the settlement of the property rights of the husband and wife. The other part thereof deals with the provision to be made for the support and maintenance of the wife and minor child of the parties and provides for the payment of the weekly sum of $50.00. . . . . "

It appears that in the foregoing case the husband, to secure such payments, agreed to and did deposit in a bank over $10,000 in stocks and bonds in trust with authority to sell the same if the payments were not made and to pay the proceeds to the wife. Of this portion of the contract the court said:

"*However,* so far as the contract relates to the payment of $50. per week for the support and maintenance the court unquestionably had the power to supersede the contract provisions by its own judgment and decree, and this it has plainly done, and done at the instance of the parties themselves. Having done so, it has all the power to revoke, change, or modify this award as it would have had, had no contract been entered into between the parties. *Wallace v. Wallace,* 74

N. H. 256, 260, 67 Atl. 580, 13 Ann. Cas. 293; *Emerson v. Emerson*, 120 Md. 584, 87 Atl. 1033; *Southworth v. Treadwell*, 168 Mass. 511, 47 N. E. 93. The contention of the appellee that under the terms of said contract, the appellant was bound to pay appellee the weekly payments until her death or remarriage, even though the appellant should die before her death or remarriage, and that therefore the decree having adopted the provisions of the contract must be held to be an award in lieu of alimony and not alimony, is not well made. Under no reasonable construction of this contract can it be construed to provide for the payment of an annuity to the wife during her lifetime, provided she does not remarry."

If the provision above referred to is an entirely separate contract in and of itself we are not called upon to determine whether respondent would be entitled to file and have allowed a claim against the estate of appellant in the sum of $3,000 in the event appellant die before the expiration of ten years and respondent be then alive as provided in the agreement and decree since the conditions giving rise to such right may or may not occur.

Respondent by her complaint in the divorce action prayed that the property be divided and apportioned in the manner set out in the contract between appellant and respondent, making the contract a part of the complaint, and, that she be awarded "alimony in the sum of $35.00 per month." There was nothing in the complaint to apprise appellant that respondent would seek something other than the ordinary allowance for her support as contemplated by section 31–706, I. C. A., and he was justified in assuming that such alimony was subject to the power of the court to modify as conferred by section 31–706, I. C. A. Appellant filed no answer, the complaint praying no more than that which respondent and appellant had by written agreement determined as between themselves, was a fair division of their property, and a proper amount for respondent to receive for her support. The rule which should govern in the situation disclosed, clearly announced by statute, and followed in decisions of this court is that:

"The relief granted to the plaintiff, if there be no answer, can not exceed that which he shall have demanded in his complaint;"

(Section 7–704, I. C. A.; *Angel v. Mellen, supra; Blackman v. Douglas,* 46 Ida. 671, 270 Pac. 618; *Gile v. Wood, supra.*) The contract which appellant and respondent had entered into was by the court ordered, adjudged and decreed to be approved and confirmed, and became a part of the decree. From the foregoing it appears the decree was necessarily based upon the agreement between the parties and the relief demanded by the complaint, as required by section 7–704, I. C. A. Considering the decree and these two grounds upon which it is based, that is, the confirmed agreement and the relief prayed, it appears that the allowance of $35 per month did not proceed from any consideration of property rights, but was purely and simply a provision for an allowance for the wife's support, subject to modification. (Sec. 31–706, I. C. A.) It follows that the words in the decree "during her lifetime" were void and should have been stricken by the lower court, and that the decree as to such provision was subject to modification. A motion to vacate a judgment void in whole or in part may be made at any time. (*Shumake v. Shumake,* 17 Ida. 649, 107 Pac. 42; *Blackman v. Douglas, supra; Angel v. Mellen, supra; Gile v. Wood, supra.*)

■■ The rule appears well settled, in the absence of statutory provision to the contrary, that while the remarriage of a divorced wife does not *ipso facto* annul the alimony provisions of the decree of divorce it affords cogent reasons for doing so, and ordinarily the alimony will cease upon remarriage of the wife upon the husband's application to be relieved therefrom. (*Heston v. Odlin,* 125 Wash. 477, 216 Pac. 845; *Hale v. Hale,* 6 Cal. App. (2d) 661, 45 Pac. (2d) 246; *Cohen v. Cohen,* 150 Cal. 99, 88 Pac. 267, 11 Ann. Cas. 520; *Atlass v. Atlass,* 112 Cal. App. 514, 297 Pac. 53; *Myers v. Myers,* 62 Utah, 90, 218 Pac. 123, 30 A. L. R. 81; *McClure v. McClure,* 4 Cal. (2d) 356, 49 Pac. (2d) 584, 100 A. L. R. 1257; *Phy v. Phy,* 116 Or. 31, 236 Pac. 751, 240 Pac. 237, 42 A. L. R. 588; 19 C. J., p. 276, note 93; note in 37 A. L. R. p. 441.) In many of the cases the rule is expressed that

good public policy would not compel a divorced husband to support his former wife after she has become the wife of another, except under most extraordinary conditions, and, that unless such conditions are shown by the former wife to exist, the court should, on the former husband's motion, stop such payments in all cases where there are no children and the allowance is not based upon property rights. No unusual conditions appear herein. The allowance, as heretofore stated, appears to have been for the wife's support, not based upon property rights, and there are no children. Under our statutes the husband must maintain and support the wife and family. (*Hall v. Johns,* 17 Ida. 224, 105 Pac. 71; *Edminston v. Smith,* 13 Ida. 645, 92 Pac. 842, 121 Am. St. 294, 14 L. R. A., N. S., 871, section 31–901, I. C. A.) By her remarriage to Christopherson respondent voluntarily accepted a new source for her support, and good public policy should not permit support of the wife from a present and a former husband at one and the same time. The decree should thus be modified, relieving appellant of the obligation to pay $35 per month support to the former wife.

The question is here presented as to whether all unpaid instalments of $35 per month accruing after the remarriage of the wife should be canceled, or, only those accruing subsequent to appellant's motion for modification, or the order of modification. The authorities are not in harmony upon this proposition, some holding the decree not subject to modification as to sums already accrued before the application or order (*Cummings v. Cummings,* 97 Cal. App. 144, 275 Pac. 245; *McGregor v. McGregor,* 52 Colo. 292, 122 Pac. 390; *Myers v. Myers, supra; Sistare v. Sistare,* 218 U. S. 1, 16, 30 Sup. Ct. 682, 54 L. ed. 905, 20 Ann. Cas. 1061, 28 L. R. A., N. S., 1068) and there is respectable authority holding that all payments accruing after remarriage should be canceled, although application is not made until subsequent to the accrual thereof, for the reason that a wife by contracting a secret marriage could mulct her former husband of a large sum by reason of alimony while being supported by her second husband. (*Cohen v. Cohen, supra; Brandt v. Brandt,* 40 Or. 477, 67 Pac. 508; *Atlass v. Atlass, supra; Morgan v.*

*Morgan,* 211 Ala. 1, 99 So. 185.) In *Linton v. Hall,* 86 Misc. 560, 149 N. Y. Supp. 385, cited on page 91, 30 A. L. R., it was held that on the remarriage of a divorced wife, the decree should be modified so as to allow the plaintiff alimony only up to the time that she remarried, and that if the defendant should be relieved from the payment of alimony only from the time of the entry of the order annulling the provision, the defendant not having notice of his former wife's remarriage until many years thereafter, it would mean in effect that a woman, by contracting a secret marriage could mulct her former husband of a large sum by reason of alimony, while being supported by her second husband.

"The modification is not limited to the time subsequent to the application. It applies *nunc pro tunc* as to the time of the remarriage to all unpaid alimony. To hold otherwise would enable a woman to conceal her remarriage and thereby obtain alimony from her former husband while living with a new spouse." (*Kirkbride v. Van Note,* 275 N. Y. 244, 9 N. E. (2d) 852, 112 A. L. R. 243.)

Attention has been called to the cases of *Simpson v. Simpson,* 51 Ida. 99, 4 Pac. (2d) 345, and *Simonton v. Simonton,* 33 Ida. 255, 193 Pac. 386, as supporting the rule that the court is unauthorized to satisfy delinquent instalments of support money actually accrued prior to the date of order upon partial payment thereof, which cases do not appear to be controlling herein inasmuch as neither deals with the question of an allowance for support after remarriage of the wife. In neither case was the wife remarried. In the instant case however, the facts are such as disclose a right to cancelation of all sums accruing after the remarriage, regardless of what may be the rule in ordinary cases. The record discloses that respondent was secretly remarried in a foreign jurisdiction, St. George, Utah, to Christopherson and that appellant continued for eight months thereafter to pay $35 per month for her support, having no knowledge of the remarriage. Hearing rumors of respondent's remarriage appellant wrote various county recorders in this and neighboring states and after considerable effort finally ascertained the fact and date of respondent's remarriage, and

he thereupon sought modification of the decree. The affidavit in contempt proceedings filed by respondent October 8, 1936, approximately sixteen months after her remarriage, and by which she sought to collect the $35 per month for her support which accrued subsequent to her remarriage, indicates upon its face an active effort upon respondent's part to keep her remarriage a secret from appellant. The affidavit is subscribed and sworn to by Mrs. Florence McHan, which was not then, and had not been for sixteen months, her name. Under the circumstances it clearly appears that the delay in making the application for modification of the decree was through no fault of appellant but was due entirely to respondent's effort to keep her remarriage secret, which being true, we are of the opinion that all payments accruing subsequent to respondent's remarriage and remaining unpaid should be canceled upon the ground of public policy.

■■ Appellant's fifth assignment of error is to the effect that the court erred in ordering appellant to pay $100 attorney's fee to respondent, his former wife, and in this connection it is here proper to determine the further question of whether or not respondent's application in the former proceeding, *McHan v. McHan, supra,* for an allowance for attorney's fees and costs of printing brief in this court should be granted. The right of a wife in a pending divorce proceeding (*McHan v. McHan, supra*), to an allowance for an attorney fee is dependent, in part at least, upon the necessity of the divorced wife. (19 C. J., p. 235, sec. 533.) It will be remembered that, if it is correct to hold that appellant's obligation to pay an allowance of $35 per month for respondent's support terminated upon the secret remarriage of respondent, respondent had been paid $280 after her remarriage and before it was discovered, which amount would be ample to cover her attorney's fees in the court below and this court. It may be further observed that respondent has separate property from which she derives income. (*McDonald v. McDonald*, 55 Ida. 102, 29 Pac. (2d) 293, sec. 31–704, 31–709, I. C. A.)

The order is reversed and the cause remanded.

MORGAN, J.—I concur in the conclusion reached by Mr. Justice Budge, but am of the opinion we will do well to reserve a discussion of the effect of the provision in the contract and decree that, ''in the event that the party of the first part shall die before the expiration of ten years from date hereof, and the party of the second part be then alive, then and in that event, the party of the second part shall be entitled to file and have allowed a claim against the estate of the party of the first part in the sum of $3,000,'' for those who may occupy the supreme bench of Idaho when the contingency sought to be provided for occurs, and the question is brought to the court for decision, if it ever is. A determination of the effect of that provision is not necessary to a decision of the question now before us, which is: Does the remarriage of respondent result in depriving her of the $35 a month alimony provided for her in the decree? The answer to that question should be in the affirmative.

AILSHIE, J. (Specially Concurring in Reversal of Order).—Prior to the commencement of the divorce action involved in this case, the parties entered into a contract settling their property rights and also fixing the amount per month the wife should be entitled to receive from her husband for her ''support,'' in the event a decree of divorce should be obtained. The contract further provided that, in the event the husband should die before the expiration of ten years from date of the contract ''and the party of the second part be then alive, then and in that event, the party of the second part shall be entitled to file and have allowed a claim against the estate of the party of the first part in the sum of $3,000.00.'' This contract was approved by the court and the decree reads in part as follows:

''The defendant is further ordered and directed to pay to the plaintiff during her lifetime for her support a monthly sum of $35.00 per month, the first payment of which became due on November 23, 1932, the next payment to be due January 1, 1933 and the remaining payments monthly thereafter, provided, however, that in the event that the defendant die before the expiration of ten years from date hereof, and

the plaintiff be then alive, the plaintiff shall be entitled to file and have allowed a claim against the estate of the defendant in the sum of $3,000.00.''

The following conclusions seem clear to me from the contract of the parties and the decree entered thereon:

1. That the wife should receive the monthly sum of $35 ''for her support.'' The duration of those payments was not fixed in the contract but the court said, ''during her lifetime.''

2. That if the husband died within ten years from the date of the contract and the wife survived him, she should receive the lump sum of $3,000 from his estate; and

3. That if the wife died prior to the death of the husband and within the ten-year period, all right to the $35 per month and to the $3,000 lump sum payment by his estate would be terminated.

From the foregoing, it seems clear to me that the $35 per month was intended as alimony or, as stated in the contract, ''for her support''; and that the payment of the $3,000 was a part of the property settlement limited by two contingencies, (a) that the husband die within ten years and (b) that the wife survive the husband. Now, the thing has happened that was not contemplated by this contract, namely, the wife has remarried, and under what I believe to be the better rule of law, the alimony ceased with the remarriage. But that leaves the provision for the payment of the $3,000 an unsatisfied contingent liability. That contingency could in no way be affected by the remarriage of the wife.

In the opinion of Justice Budge, after stating the contention of respondent, ''that the required payment of $35 a month was intended to represent 'more than alimony in its strictest legal interpretation and that the monthly payments were intended to be partially in lieu of respondent's rights in the community property,' '' it is further said:

''If it be an integral part of the provision for the payment of $35. per month it appears more logical that such provision was inserted for the purpose of securing to respondent, (sec. 31–707, I. C. A.) while she was entitled thereto, the payment of $35. per month for her support, should appel-

lant die within ten years and while respondent was still entitled to receive an allowance for her support, and there is evidence that such was appellant's understanding:

"'MR. JAMES: This division of the property and claim against the estate in case you died, for three thousand dollars; weren't all of these your suggestions:

"'A. No, sir, you said: 'Your wife should have a little protection supposing you die in a year or two or three; she ought to have *something out of the estate*.' ''

Just *how* or in *what manner* it can serve as *security* does not appear. Mr. James said: "have something out of the estate."

The case of *Gloth v. Gloth*, 154 Va. 511, 153 S. E. 879, 71 A. L. R. 700, cited and quoted from by Justice Budge, has, in my judgment, no bearing on the case at bar for the reason that bonds and other securities were placed on deposit with the bank as security for the weekly payments, with authority to the bank to sell and dispose of same if it became necessary to meet the weekly payments. No such question arises here.

Further along in Justice Budge's opinion it is again stated: "In the instant case, however, the facts are such as disclose a right to cancellation of *all sums accruing after the remarriage,* (italics supplied) regardless of what may be the rule in ordinary cases." From the foregoing and other statements in the opinion of Justice Budge, it seems clear to me that the opinion holds that the $35 monthly payment is *wholly and distinctly alimony* and that it is repudiating the contention of respondent, "that the monthly payments were intended to be *partially in lieu of respondent's rights in the community property*." If that is the holding intended, then clearly the contingent liability to pay the $3,000 is and can be nothing other than a part of the property settlement, and dependent wholly upon the happening of the contingencies required to mature the obligation.

Now, in view of the fact that the respondent has presented her case and relies on the contention "that the monthly payments were intended to be partially in lieu of respondent's rights in the community property" and that the "wife should have a little protection supposing" that if the hus-

band "die in a year or two or three; she ought to have something out of the estate"; it seems self-evident that Justice Budge is repudiating the contention so made by respondent and holding that the monthly payments on the one hand and the contingent liability to pay $3,000 on the other are wholly separate and distinct from each other. It certainly does not meet the issue to hold as hereinabove quoted and then to say, "it is not necessary and we specifically do not determine herein whether this provision is an integral part of the provision contained in the decree for the payment of $35 per month, or whether it is a contract separate and apart therefrom." The two questions are so intimately commingled and related that the decision of the one involves the other.

The case should be so definitely disposed of on this appeal that if and when the contingency arises entitling the respondent to present and collect her claim for $3,000, she may not be confronted with the plea of *res adjudicata* and the contention that the decision in this case settled the matter as to "all sums accruing after her remarriage."

It is my judgment that the liability for monthly payments for "support" ceased on the wife's remarriage and that the decree remains in full force and effect as to the contingent liability against appellant's estate. The decree with reference to the payment of the $3,000 provided for in the contract, was a part of the property settlement and so decreed and is now *res adjudicata,* and is not subject to modification by the courts.

The order is reversed and the cause remanded. No costs awarded.

Holden, C. J., and Givens, J., concur.

Petition for rehearing denied.