## DAGGETT et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9879.

Circuit Court of Appeals, Ninth Circuit.

May 28, 1942.

Rehearing Denied July 15, 1942.

Reece Clark and George Clark, both of Berkeley, Cal., for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, Louise Foster, and Edward H. Hammond, Sp. Assts. to the Atty. Gen., for respondent.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

The petitioners, as executors of the estate of Estelle P. Clark, have brought here for review a decision of the United States Board of Tax Appeals sustaining the determination of the Commissioner of Internal Revenue that in the income tax return of decedent for the years 1936 and 1937, periods prior to her death on September 19, 1937, there were deficiencies of $2,365.06 and $1,149.14, respectively. These deficiencies were assessed as being the income tax due on sums of money received by the decedent after her former husband's death from a trust which he created for her benefit in accordance with an agreement executed shortly before their divorce. The facts, which were stipulated, may be stated as follows:

The trust was created in 1906 by James F. A. Clark in accordance with an agreement which he and his wife, the decedent, both then residents of the state of New York, made in consideration of a release by the decedent of all claims against her husband and his estate for her support and that of their child during the latter's minority. In the agreement it was recited that the husband "is willing to provide for the support of his wife and child, so as to avoid proceedings against him for compulsory support", "the intent hereof being to provide for [Estelle P. Clark] such support as she would be able to enforce, but for the provisions hereby made". The husband agreed "at all times to keep and maintain in the hands of the trustee good, valid and marketable securities of a market value which shall at no time bear and yield an annual income of less than Twenty Five Thousand Dollars ($25,000)". The trustee was to pay this amount to the wife annually for life (or if she should remarry, $15,000 annually thereafter) and to pay any excess income to the husband or his legal representatives.

It was agreed that the husband or his legal representatives would pay to the trustee the amount of any deficiencies in trust income. The wife was given the right to appoint by will from the trust, securities of the market value of $150,000 to such persons as she might designate; upon her death the remainder was to be returned to the husband or his legal representatives. Should the wife remarry, securities of the market value of $200,000 were to be returned to the husband or his estate. The agreement also provided for the release of any and all of her dower rights.

On October 1, 1906, the wife procured an absolute divorce in South Dakota. The decree stated, inter alia, "It further appearing to the Court that sufficient and suitable provision has heretofore been made by the defendant for the maintenance and support of the plaintiff and of the said Carol Clark [the minor child, a daughter], it is further * * * Ordered, Adjudged and Decreed that no allowance be made the plaintiff for alimony, support and maintenance, and that in this respect this decree shall be final and not subject to future modification or amendment".

Pursuant to the agreement the trust was carried out. Estelle P. Clark never remarried, and prior to 1930 the child attained her majority. On December 9, 1935, James F. A. Clark died, and Estelle P. Clark, who had been a resident of California since 1930, died on September 19, 1937. In her will she made disposition of $150,-000 of the trust corpus, which appointment is now the subject of litigation. During his life Clark made good all deficiencies in trust income when it was less than $25,-000, and in those years in which the amount of trust income exceeded that sum the excess was paid over to him. For the fiscal year ending July 7, 1936, there was a deficiency of $4,040.06, which sum the trustee recovered from the husband's executor in a suit brought in the superior court of New York county, New York.

Prior to his death Clark paid the income taxes due upon the payments received by the wife under the separation agreement, but the Commissioner of Internal Revenue determined that upon the death of the husband, the decedent became the sole beneficiary of the trust, and that as such she was subject to taxation upon the distributable income as provided by Section 162 of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 1706, 26 U.S.C.A. Int.Rev.Code §

162, the pertinent part of which reads as follows:

"§ 162. Net income

"The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

    *     *     *     *     *

"(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year".

In upholding the Commissioner's determination the Board remarked that "Here the petitioner continued to receive the trust income after the husband's death by reason of her continuing right as beneficiary under the trust agreement", and then declared, "It [the trust income] can no longer be regarded as coming from him in discharge of his marital duty to support her, but only from the trustee in discharging the trust, her exemption under the aegis of Gould v. Gould, supra [245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211], having ended with her former husband's death."

The language of Section 162(b) plainly states that in every case where the income of a trust "is to be distributed currently by the fiduciary to the beneficiaries", the amount must "be included in computing the net income of the beneficiaries". If this unequivocal language is followed, the determination of the Board must be upheld. It is argued, however, by petitioners that this trust income is not taxable because, as it is asserted, the payments to Mrs. Clark were alimony received in discharge of the marital obligation and not income within the enactment. Petitioners cite and rely upon Gould v. Gould, 245 U.S. 151, 38 S. Ct. 53, 62 L.Ed. 211; Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391; Helvering v. Fuller, 310 U.S. 69, 60 S.Ct. 784, 84 L.Ed. 1082; Helvering v. Leonard, 310 U.S. 80, 60 S.Ct. 780, 84

L.Ed. 1087, and Alsop v. Commissioner, 3 Cir., 92 F.2d 148.

The Gould case held that alimony paid monthly to a divorced wife under a decree of court was not taxable as "income" under the Income Tax Act of October 3, 1913, 38 Stat. 114, 166. That statute did not cover the income from trusts, and that question was not involved. The decision rested on the determination that monthly alimony awarded by a court decree was not income.

In the case of Douglas v. Willcuts, supra, 296 U.S. 1, 56 S.Ct. 59, 60, 80 L.Ed. 3, 101 A.L.R. 391, Douglas, the husband, sued to recover money paid to the collector for tax collected from him upon the income from a trust established in favor of his divorced wife. The court there enlarged upon the Gould case, and applied it on the theory that the payments were made under the court decree, which embodied the trust agreement. The decree was rendered by a Minnesota court, which adopted a provision agreed to by the parties on the eve of the action, whereby securities were conveyed by the husband to a trustee from the income of which the wife, during her lifetime, was to receive annual payments "in lieu of, and in full settlement of alimony, and of any and all dower rights or statutory interests in the estate" of her husband, and "in lieu of any and all claims for separate maintenance and allowance for her support". The decree adjudged that the husband provide and create the trust fund as set out in the agreement, and that the wife have the provision made in the agreement "in lieu of all other alimony or interest in the property or estate" of her husband. It was held that by the law of Minnesota the state court was not bound by the trust agreement but had full authority to make the allowance to the wife out of the husband's property and to set up a trust to give effect to the allowance; and by adopting the terms of the trust agreement, it made them its own. After citing the various statutes of Minnesota covering the subject of divorce, alimony, allowance for support, etc., the decision says, at pages 6-9 of 296 U.S., at pages 61, 62 of 56 S.Ct., 80 L.Ed. 3, 101 A.L.R. 391:

"The Supreme Court of the State has decided that the district court in exercising this authority is not precluded by stipulations and agreements of the parties, entered into pending the action (but not void by reason of having been made to facilitate the decree of divorce), from making such provision for the wife as the court may deem appropriate. Such stipulations or agreements do not control the court. The court may adopt or reject them as it deems best in the light of the situation of the parties. When such agreements are approved, and in effect are embodied in the decree, they do not detract from the authority of the court to alter or revise its decree and the provisions made for the wife's benefit. * * *

"Within the limits prescribed by the statute (and there is no suggestion that the provision here went beyond those limits) the court had full authority to make an allowance to the wife out of her husband's property and to set up a trust to give effect to that allowance. Being satisfied with the provision made by the trust agreement, the court incorporated that provision in its decree. The court did not approve the trust agreement as one deriving efficacy from the action of the parties. The court made its own requirement. The decree required the petitioner to 'provide and create the trust fund.' While the terms of the trust as set up in the trust agreement were approved, the court made those terms its own. It was from this action of the court that the trust derived its force. * * *

"In the present case, the net income of the trust fund, which was paid to the wife under the decree, stands substantially on the same footing as though he had received the income personally and had been required by the decree to make the payment directly."

The case of Helvering v. Fitch, 309 U.S. 149, 60 S.Ct. 427, 84 L.Ed. 665, while varying somewhat in its facts was rested squarely on the authority of Douglas v. Willcuts, supra, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391. In the Fitch case the husband created a trust for the support of his wife, from whom he was separated, and in settlement of a suit brought by her for maintenance, transferred to a trustee in Iowa certain premises and a lease thereon. A stipulated amount of the income was to be paid monthly to the wife, and the trust was irrevocable. The husband reserved no interest in the trust estate (other than a life interest in the excess of income over the amount payable to the wife), and did not undertake to make good any deficiencies in payments to the wife. The arrangement was subsequently confirmed by an Iowa court in a decree of divorce. *Held*, the

general rule is that amounts paid to a divorced wife under a decree for alimony are not regarded as income of the wife but as paid in discharge of the general obligation of the husband to support, which is made specific by the decree. Douglas v. Willcuts, supra, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391. Concluding, the court said, at page 156 of 309 U.S., at page 430 of 60 S.Ct., 84 L.Ed. 665.

"* * * Respondent has not clearly shown that in Iowa divorce law the court has lost all jurisdiction to alter or revise the amount of income payable to the wife from an enterprise which has been placed in trust. For all that we know it might retain the power to reallocate the income from that property even though it lacked the power to add to or subtract from the corpus or to tap other sources of income. If it did have such power, then it could be said that a decree approving an alimony trust of the kind here involved merely placed upon the pre-existing duty of the husband a particular and specified sanction. In that event, the case would be little different from one where the husband was directed to make specified payments to the divorced wife. And we see no reason why the rule of Douglas v. Willcuts, supra, should not then apply.

"Enough has been said to show that respondent has not sustained the burden of establishing that his case falls outside the general rule expressed in Douglas v. Willcuts, supra. If we were to conclude that this case is an exception to that rule we would be acting largely on conjecture as to Iowa law. That we cannot do. For if such a result is to obtain, it must be bottomed on clear and convincing proof, and not on mere inferences and vague conjectures, that local law and the alimony trust have given the divorced husband a full discharge and leave no continuing obligation however contingent. * * *"

Here again we have the holding that the payments to the divorced wife were alimony because supported by the court decree.

It might be worth noting that Justice McReynolds, who wrote the opinion in Gould v. Gould, supra, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211, dissented, saying that the opinion of the court below, which held the case of Douglas v. Willcuts, supra, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391, inapplicable, should be affirmed

In Helvering v. Leonard, supra, 310 U.S. 80, 60 S.Ct. 780, 84 L.Ed. 1087, a separation agreement providing for the support of a wife embraced a trust agreement whereby the husband contributed to the corpus securities and cash, including corporate bonds the payment of the principal and interest of which he guaranteed. The trust could be amended by the husband and wife jointly, and the husband retained a limited power of substitution in respect of certain bank stock which was part of the corpus. Otherwise the trust was irrevocable and the husband retained no right to either the corpus or the income. A specified amount of the trust income was to be paid to each of three children; the remainder to the wife; and upon her death, the corpus was to be held for the children. The separation agreement also obligated the husband to pay to the wife annually a certain additional sum for the support of herself and the children, subject to reduction upon application to a court of competent jurisdiction. The arrangement was approved by a decree of divorce in New York. The court held that the agreement was merely security for respondent's continuing obligation to support his wife as ratified by the divorce decree. The opinion, inter alia, says, at pages 84–87 of 310 U.S., at pages 783, 784 of 60 S.Ct.:

"* * * We recently stated in Helvering v. Fitch, supra, 309 U.S. 149 [156], 60 S.Ct. [427], 430, 84 L.Ed. 665, that under this statutory scheme escape from the rule of Douglas v. Willcuts, supra, may be had only on 'clear and convincing proof' that 'local law and the alimony trust have given the divorced husband a full discharge and leave no continuing obligation however contingent.' * * *

"As we have seen, the divorce decree approved, affirmed and made part of the judgment the separation agreement providing for the 'support and maintenance' of the wife. * * * In Helvering v. Fitch, supra, we stated that where the divorced husband desires to avoid the general rule expressed in Douglas v. Willcuts, supra, he carries a distinct burden of establishing not by mere inference and conjecture but by 'clear and convincing proof' that local law and the alimony trust have given him a full discharge. We do not think that respondent has sustained that burden.

"* * * We need not decide whether the court retained the power to require respondent to make additional payments to the wife in case, say, all the securities in trust turned out to be worthless. All we do hold is that respondent has not shown by

'clear and convincing proof' that the court lacks the power to add to his personal obligations in any such circumstances."

In all of these cases discussed it was the husband who sought to avoid the payment of the tax on the income of a trust which he had created for his wife's benefit, which trust agreement had been embodied in the divorce decree. The court in each of the cases held that this was in effect an award of alimony subject to the control of the court and therefore within the holding of Gould v. Gould, supra, 245 U.S. 151, 38 S. Ct. 53, 62 L.Ed. 211.

This trend of the court is also revealed by the decision in Helvering v. Fuller, 310 U.S. 69, 60 S.Ct. 784, 84 L.Ed. 1082. There the divorced husband likewise sought to be relieved from the payment of any tax on the income from the trust which had been created for the benefit of wife. The court there said, at page 73 of 310 U.S., at page 786 of 60 S.Ct.:

"* * * It seems to be admitted that under Nevada law the wife's allowance once made is final * * * unless the decree itself expressly reserves the power to modify it * * * or unless the decree approves a settlement which in turn provides for a modification. * * *"

Although it was admitted that no power was reserved in the decree to modify the terms of the settlement, the Commissioner argued, at page 73 of 310 U.S., at page 786 of 60 S.Ct., "that the rule of Douglas v. Willcuts, supra, should nonetheless apply since the decree recognized the husband's pre-existing duty to support and defined that duty as coextensive with what the parties had themselves arranged, and since the husband simply carved out future income from property which he then owned and devoted it in advance to the discharge of his obligation". The court took a different view, pointing out that the marital obligation of support and the question as to whether it had been discharged by the divorce decree depends on state law. The court said, at pages 74, 75 of 310 U.S., at page 787 of 60 S. Ct.:

"* * * In the instant situation, an inquiry into state law seems inescapable. For the provisions in the revenue acts and regulations concerning the non-deductibility of 'family expenses' and of 'alimony' do not illuminate the problem beyond implying the necessity for an examination of local law to determine the marital status and the obligations which have survived a divorce. The

Nevada cases tell us that under such a decree as was entered here the obligation to support was pro tanto discharged and ended. * * *"

It was held that according to the law of Nevada the decree having reserved no power of modification, the court could not thereafter compel the husband to support the wife even though no provision in the trust agreement had placed such an obligation on him. The court decided that the divorced husband was not liable for the tax on the income from the trust that was payable to the divorced wife, but indicated that it might be required of her.

In the recent case of Pearce v. Commissioner, 62 S.Ct. 754, 86 L.Ed. ——, decided by the Supreme Court March 9, 1942, the holding of the Board of Tax Appeals requiring payment of the tax by the divorced wife upon the income from an annuity contract which originated in an agreement for her support was affirmed. The petitioner had obtained an absolute divorce in Texas. Neither alimony nor a property settlement was mentioned in the decree. In adverting to the situation occasioned by the state law the court said, at pages 757, 758 of 62 S.Ct.:

"By statute in Texas alimony may be awarded during the pendency of a suit for a divorce 'until a final decree shall be made in the case'. * * * 'In this state the legal duty of the husband to support his wife ceases upon the severance of the marital bonds, nor has a court the power to decree that a husband or his property may be subjected to such support after divorce. Permanent alimony is not provided for by Texas statutes.' * * *

"For even though petitioner established that the divorce court retained that broad power, not specifically reserved, and even though we assume that the power to make a division of property is the equivalent of a power to provide permanent alimony, she has not maintained her burden of rebutting the presumptively correct determination of the Commissioner that the income from this annuity contract was taxable to her. In order to maintain that burden she would have to show that it was at least doubtful and uncertain whether the Texas court, as an incident of its power to require the husband to support his wife, retained control over this annuity contract or the income from it. * * *"

In all of these cases the question of control of the so-called agreements for

alimony or support by the state court granting the divorce seems to have been an important factor in the decisions. It appears that income from a trust payable to a divorced wife is exempt under the taxing act as alimony or as an allowance for support where based on a separate agreement if the court in its decree of divorce retains power to modify or in some way control payments thereunder. The question as to whether the court has this power is to be determined by the law of the state where the decree of divorce was granted. Here the divorce decree was secured in South Dakota. The decree of the court of the state of South Dakota which granted the divorce specifically decreed "that no allowance be made the plaintiff for alimony, support and maintenance, and that in this respect this decree shall be final and not subject to future modification or amendment". See Cameron v. Cameron, 31 S.D. 335, 140 N.W. 700, Ann.Cas.1915D, 1062.

■■ Petitioners, to escape from the application of these decisions to the South Dakota decree insist that the separation agreement here involved, having been executed in New York, the effect thereof must be determined in accord with the law of that state. But even from that point of view we must arrive at the same result. New York courts have no power to decree alimony for the life of a wife so as to bind the husband's estate in the event he predeceases her, because the husband's marital duty of support is upon him only during his lifetime. Wilson v. Hinman, 182 N.Y. 408, 75 N.E. 236, 2 L.R.A.,N.S., 232, 108 Am.St. Rep. 820; Barnes v. Klug, 129 App.Div. 192, 113 N.Y.S. 325, 328. But a husband may voluntarily consent, either by way of separation agreement or through a decree of court, to make periodic payments to the wife for support during her life, and in that event, should he predecease her, his estate will be held legally responsible for the continuance of the payments for the remainder of the wife's life. Barnes v. Klug, supra, 129 App. Div. 192, 113 N.Y.S. 325, 328; In re Golding's Estate, 127 Misc. 821, 216 N.Y.S. 593, 596; In re Fuller's Estate, 151 Misc. 387, 271 N.Y.S. 685, 687. In the instant case, by the terms of the agreement, the husband's estate was to maintain the securities in the trust and to make up any deficiencies in the annuity guaranteed to the wife, and according to In re Golding's Estate, supra, 127 Misc. 821, 216 N.Y.S. 593, 596, such agreement was legally enforceable against the estate. However, the only legal obligations devolving upon the estate by reason of the agreement made by the husband were to maintain the securities in the trust and to make up deficiencies in the trust income, and because there was no duty upon the part of the estate to support the wife such as there was upon the husband during his life due to the marital relationship, therefore the payments received by the wife directly from the trust cannot be attributed to the estate for purposes of properly assessing the income tax, as was the situation with the husband during his lifetime on the grounds that he, through the discharge of his obligation, enjoyed "the benefit of the income as though he had personally received it". Only that money received by the wife from the estate directly, in the way of deficiency payments, was in discharge of an obligation of the estate.

■ In this connection it must be kept in mind that in the case here it is sought to tax as income to the wife only that money received by her from the trust after the husband's death, and not any contribution for deficiencies made by the estate. From a consideration of all the authorities we think that this determination is correct because, upon the demise of the husband, for any amount not in excess of $25,000 the wife became the sole beneficiary of that much of the distributable income of the trust, and the tax on that amount is all that is sought to be collected here. By the direct and explicit terms of Section 162(b), 26 U.S.C.A., Int. Rev.Code § 162(b), Congress has revealed its intention to tax the beneficiaries of the distributable income of all trusts. In Helvering v. Butterworth, 290 U.S. 365, 369, 54 S.Ct. 221, 222, 78 L.Ed. 365, it was stated that "The evident general purpose of the statute was to tax in some way the whole income of all trust estates". The petitioners have not shown that the exceptions recognized in the Douglas case, supra, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391, and in Helvering v. Blumenthal, 296 U. S. 552, 56 S.Ct. 305, 80 L.Ed. 390, extend so as to include a situation of the nature of the one before us.

The case of Alsop v. Commissioner, supra, 92 F.2d 148, contrary to the petitioners' contention, is not identical in principle with the case at hand. There it was recognized that remarriage does not automatically terminate the husband's obligation to make alimony or allowance payments but that such event is generally considered sufficient rea-

son to modify the court decree. In that case no modification had taken place and consequently the husband was held taxable for the payments made to the wife in accordance with his agreement to provide for her for life. There can be no question that in the instant case the husband's death terminated his personal obligation to support the wife.

In every case relied upon by petitioners the settlor of the trust was still living, but such is not the case here.

That the husband's estate may be liable for his obligations originating in contracts not dependent upon his personal services, does not require that payments of trust income are to be regarded as being in discharge of such personal liability on the part of the estate. As the court remarked in Pearce v. Commissioner, supra, 62 S.Ct. 754, 759, 86 L.Ed. ——, "There may be difficulty in placing a particular case on one side of the line rather than the other. But as stated by Mr. Justice Holmes in Irwin v. Gavit, 268 U.S. 161, 168, 45 S.Ct. 475, 476, 69 L.Ed. 897, 'That is the question in pretty much everything worth arguing in the law.'"

We are not concerned here with any argument based on the fact that the deceased husband paid the tax on the income from the trust which went to the divorced wife, or with the speculation that the estate might still be required to pay a tax on the income of the trust. There are instances where, under certain situations, both parties have been required to pay income tax on the earnings of the trust, but such speculations are not our problem. We are confronted with the sole question: Was the income received by the divorced wife after her husband's death from the trust liable to the tax under the statute?

Whether or not the income received by Mrs. Clark is exempt depends upon the application of the law as to her. As a wife she had a legal right to support from her husband during his life unless the marriage was dissolved by a decree of divorce. Before the divorce here occurred, the agreement which was entered into made provision for satisfying her legal right for support or alimony. It also definitely disposed of any and all right of dower in the husband's property.

The right to support of the wife by the husband, which originates at the beginning of marriage ends at his death. Although a divorced woman may have had a right to income under a trust agreement which was designed in part to provide for support and alimony and which income continued after her former husband's death, it cannot be said that such payments were still in discharge of his marital duty of support.

None of the cases cited by petitioners involve income payments from the trust after the death of the divorced husband; so these cases do not present the exact question to be determined here. In the case of Thomas v. Commissioner, 2 Cir., 100 F.2d 408, 121 A.L.R. 469, this precise point was pertinent, and it was there decided that payments of trust income received by the divorced wife after her former husband's death were taxable to her although prior to his death they were taxable to him.

The facts in that case were similar to those in the instant case. Here, too, in addition to the provision for support and maintenance the agreement provided that the wife release to the husband "his grantees, legal representatives and assigns, all her dower and right of dower in and to the real property now owned by the [husband] * * * or which may hereafter be acquired by him". Also, by the agreement the wife was given the right to dispose of, by will, securities, part of the trust, to the value of $150,000. These provisions demonstrate that the agreement included considerations in addition to the maintenance and support of the divorced wife. In commenting on such a situation the decision in Thomas v. Commissioner, supra, 100 F.2d 408, 410, 121 A.L.R. 469, aptly said:

"* * * From Helvering v. Brooks, 2 Cir., 82 F.2d 173, and Helvering v. Butterworth, 290 U.S. 365, 54 S.Ct. 221, 78 L.Ed. 365, it may be inferred that the income in the case at bar should for reasons of practical administration be treated as paid by the husband for support and maintenance of the wife while he is alive and received by her, for her dower or other statutory rights after he has died Such a ruling avoids subjecting the husband's estate to administrative burdens after his death and also avoids attempting to discover what portion of the consideration was furnished for support and maintenance of the wife and what portion for her statutory interest in her husband's property. * * *"

The petitioners not having sustained the burden required to overcome the ruling of the Commissioner, the determination of the Board of Tax Appeals is affirmed.

HANEY, Circuit Judge (dissenting).

The majority opinion is, I think, not in accord with the views as expressed in Helvering v. Fitch, 309 U.S. 149, 60 S.Ct. 427, 84 L.Ed. 665; Helvering v. Fuller, 310 U.S. 69, 60 S.Ct. 784, 84 L.Ed. 1082; Helvering v. Leonard, 310 U.S. 80, 60 S.Ct. 780, 84 L.Ed. 1087, and Pearce v. Commissioner, March 9, 1942, 62 S.Ct. 754, 86 L.Ed. ——. In the case of alimony trusts, the income of the trust paid to the wife constitutes income either to the husband or to the wife, depending upon the existence of an obligation. If the husband is obligated to the wife, even though contingently, a satisfaction of that obligation by the trust constitutes income to the husband but not to the wife because the latter is merely receiving payment on her obligation. See Commissioner v. Nicolai, 9 Cir., March 28, 1942, 126 F.2d 927.

From this it is apparent that to escape taxation, the husband must show that there is no obligation on his part which is satisfied by payments to the wife from the trust, and if it is the wife who seeks to escape taxation, she must show that there was an obligation on the husband. Since the Commissioner's determination is presumptively correct, the burden to show error is on whoever seeks to upset that determination. Since in the instant case, it is the wife who seeks to overturn the Commissioner's determination, she has the burden of proving that the payments were made to her from the trust pursuant to a continuing obligation of the husband. Pearce v. Commissioner, supra. The degree of proof required is "clear and convincing proof". Id. [62 S.Ct. 758, 86 L.Ed. ——].

The wife introduced an agreement made with her husband by which the husband, and "his estate" agreed to make up any deficiencies in trust income. Such an agreement is clear and convincing proof of a contractual obligation quite as much as an agreement guaranteeing payment of principal and interest of bonds in the alimony trust as in Helvering v. Leonard, supra, at page 84 of 310 U.S., at page 783 of 60 S.Ct., 84 L. Ed. 1087. As said there, the fact that the husband might never have to make good his promise is "beside the point".

While it may be assumed, without so deciding that the duty of the husband or his estate to pay support to the wife based merely on the pre-existing marital status, was extinguished by the death of the husband, nevertheless the obligation of the husband herein is not based on the pre-existing marital status, but on a written agreement of guaranty. That agreement specifically bound his estate. Such an agreement is like any agreement guaranteeing payment of the debt of another. In such case the promise is not extinguished merely because the guarantor dies. In addition the applicable local law seems to specifically hold the obligation to continue. Finally, no local law to the contrary or even bearing on the question is cited by respondent. In fact, respondent concedes that the contractual obligation survives by saying: "Of course, the husband's estate becomes liable for his debts and obligations arising out of contracts which are not dependent upon his personal services. * * *"

It is my opinion that under these circumstances it cannot be said that the wife has failed to carry her burden of showing an obligation on the part of the husband's estate.

The decision should be reversed.